UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **KAWANDA M. CAPERS** | * | **CIVIL ACTION NO. 16-1360** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **NANCY W. BERRYHILL, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

### Background & Procedural History

Kawanda Capers filed the instant application for Title II Disability Insurance Benefits on August 1, 2013. (Tr. 23, 118-119). She alleged disability as of June 1, 2013, because of major depressive disorder with psychotic features, "OCD," high blood pressure, acid reflux, and a July 1, 2013, nervous breakdown. (Tr. 122, 126). The state agency denied the claims at the initial stage of the administrative process. (Tr. 57-70). Thereafter, Capers requested and received an August 13, 2014, hearing before an Administrative Law Judge ("ALJ"). (Tr. 36-56). However, in a February 23, 2015, written decision, the ALJ determined that Capers was not disabled under the Act, finding at step five of the sequential evaluation process that she was able to make an adjustment to other work that exists in significant numbers in the national economy. (Tr. 20-32).

Capers appealed the adverse decision to the Appeals Council. On July 28, 2016, however, the Appeals Council denied her request for review; thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 1-4).

On September 28, 2016, Capers filed the instant complaint for judicial review. Succinctly re-characterized, she alleges the following errors,

1) for various reasons, the ALJ's residual functional capacity assessment regarding the effects of plaintiff's mental impairments is not supported by substantial evidence; and

2) the ALJ' step five determination is not supported by substantial evidence because the ALJ's hypothetical to the vocational expert did not include all of plaintiff's limitations of functioning.

**Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the

Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

### Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can

> still perform past relevant work, then a finding of "not disabled" will be made.
>
> (5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## **The ALJ's Findings**

**I.    Steps One, Two, and Three**

The ALJ determined at step one of the sequential evaluation process that Capers did not engage in substantial gainful activity during the relevant period. (Tr. 25). At step two, she found that Capers suffered severe impairments of major depressive disorder and mood disorder (not otherwise specified). *Id.*[1] She concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 25-27).

---

[1] The ALJ found that additional impairments of hypertension and gastroesophageal reflux disease were not severe. *Id.*

## II. Residual Functional Capacity

The ALJ next determined that Capers retained the residual functional capacity ("RFC") to perform work at all exertional levels, reduced by the following non-exertional limitations: limited to simple, routine, repetitive tasks; limited to making simple work-related decisions; and limited to tolerating few changes in a routine work settings, i.e., she would function best in standardized work environments with minimal variation. (Tr. 27-30).

## III. Steps Four and Five

The ALJ concluded at step four of the sequential evaluation process that the claimant was unable to perform her past relevant work. (Tr. 30-31). Accordingly, she proceeded to step five. At this step, the ALJ determined that the claimant was a younger individual, with at least a high school education, and the ability to communicate in English. *Id*. Transferability of skills was immaterial. *Id*.

The ALJ then observed that given the claimant's vocational factors, and if she had an RFC that did not include any non-exertional limitations, the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. § 404.1569; Rule 204.00, Appendix 2, Subpart P, Regulations No. 4. (Tr. 31-32). However, because the claimant's RFC *did* include non-exertional limitations, the ALJ consulted a vocational expert ("VE") to determine whether, and to what extent the additional limitations eroded the occupational base for work at all exertional levels. *Id*. In response, the VE identified the representative jobs of cashier II – light, *Dictionary of Occupational Titles* ("DOT") Code # 211.46-010; price marker – light, DOT # 209.587-034; and hotel housekeeper – light, DOT # 323.687-014, that were consistent with the ALJ's RFC and

the claimant's vocational profile. *Id.*[2]

## Analysis

I.    **Residual Functional Capacity**

In her decision, the ALJ reviewed the available evidence, including the hearing testimony, plaintiff's activities of daily living, treatment records, and the impressions of the treating, consultative, and agency psychologists. (Tr. 27-30). In deriving plaintiff's RFC, the ALJ assigned "great weight" to the opinion of the treating and consultative psychologist, E. H. Baker, Ph.D.[3] *Id.* She also assigned "great weight" to the opinion of the non-examining agency psychologist, Julia Wood, Ph.D. *Id.* In the end, the ALJ effectively grounded her RFC on the mental residual functional capacity assessment completed by the non-examining agency psychologist, which, in turn, was premised on the November 21, 2013, mental status examination administered by plaintiff's treating psychologist.

Because the foundation for the ALJ's RFC begins with Dr. Baker, so will the court's analysis. With the exception of two gaps, as well as some months with multiple contacts, plaintiff generally underwent monthly treatment sessions with Dr. Baker from August 2011 throughout the relevant period at issue. *See e.g.*, Tr. 182-193, 204-206, 255. The treatment notes document the waxing and waning of plaintiff's symptoms, with Baker's trying various therapies, medication combinations, and dosages. On the occasions when medication succeeded in abating

---

[2] The VE responded that for the cashier II job, there were 802,926 positions nationally. (Tr. 31, 54). For the price marker job there were 319,757 positions nationally. *Id.* For the hotel housekeeper job, there were 132,530 positions nationally. *Id.* This incidence of work constitutes a significant number of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

[3] Dr. Baker was both plaintiff's treating psychologist and the consultative psychologist with whom the state agency contracted to administer a mental status examination.

plaintiff's symptoms, any relief usually proved short-lived, or otherwise caused Capers to suffer unacceptable side effects.

Baker's treatment notes reflect that Capers went on medical leave from work in July 2013, and was laid off from her job the following month. (Tr. 186). On August 1, 2013, plaintiff filed the instant disability application. On October 7, 2013, non-examining agency psychologist, Julia Wood, Ph.D., reviewed the record, found no evidence of any functional limitations, and therefore, ordered a mental status examination. (Tr. 195).

The state agency contracted with plaintiff's treating psychologist, Dr. Baker, to perform the mental status examination, which was administered on November 21, 2013. (Tr. 198-200). At the time of the examination, Baker noted that Capers' leisure activities included watching television. *Id*. He documented that she had difficulty falling asleep and awakened frequently during the night. *Id*. Her depression symptoms included dysphoria, anhedonia, sleep disturbances, fatigue, concentration problems, and suicidal ideation. *Id*. Symptoms of mania included elevated mood lasting about one day and increased talkativeness. *Id*. Her thought process appeared to be disturbed by slow thought. *Id*. Thought content, however, was appropriate. *Id*. She was able to follow complex instructions and understand complex questions. *Id*. Recent memory appeared adequate. *Id*. Her ability to stay on task without redirection appeared to be marginally adequate. *Id*. Her interview behavior was adequate. *Id*. She was able to help maintain household chores and clean her home. *Id*.

Baker diagnosed major depressive disorder with psychotic features and mood disorder, NOS. *Id*. He opined that Capers' understanding appeared intact, immediate and delayed memory were minimal; immediate and sustained concentration were marginally adequate; persistence and pace were adequate; social interaction appeared fair; adaptation appeared

marginal; prognosis was marginal. *Id*.

On December 4, 2013, agency psychologist, Julia Wood, reviewed Dr. Baker's examination findings and quantified the effects of his findings on a mental residual functional capacity assessment, as follows:

> The claimant was moderately limited in her ability to remember locations and work-like procedures. (Tr. 61-64). She could understand, retain, and follow simple instructions involving two-steps, but not retain or understand complex instructions. *Id*. She was moderately limited in her ability to carry out detailed instructions. *Id*. She was moderately limited in her ability to maintain attention and concentration for extended periods. *Id*. Wood indicated that the claimant's ability to perform activities within a schedule, maintain regular attendance, and to be punctual were not significantly limited. *Id*. She further found that the claimant had no social interaction limitations. *Id*. Wood also documented that the claimant was moderately limited in her ability to respond to changes in the work setting. *Id*. She concluded that the claimant would function best in standardized work environments with minimal variation. *Id*.

Plaintiff contends that the ALJ's RFC is not supported by substantial evidence because Dr. Baker's evaluation included additional limitations of functioning that the non-examining agency psychologist and the ALJ failed to recognize.[4] Specifically, she asserts that the ALJ failed to include any limitations in memory, concentration, social interaction, or fatigue in her assessment of plaintiff's mental RFC.[5]

As stated earlier, the ALJ effectively adopted the limitations of functioning endorsed by Dr. Wood, which, in turn, were premised upon the examination findings of Dr. Baker. However, the undersigned cannot conclude that Dr. Wood's assessment failed to capture the effects of

---

[4] She further argues that the ALJ erred by failing to credit her own allegations regarding the limiting effects of her impairments.

[5] Plaintiff did not raise argument relative to the ALJ's finding that her impairments did not impact her physical capacity for work. Thus, the court finds that the ALJ's physical RFC is supported by substantial evidence.

plaintiff's impairments as recognized by Dr. Baker – as of November 21, 2013.[6] The ALJ limited Capers to simple work. Courts in this circuit have held that an RFC limited to simple work reasonably incorporates a moderate or even *marked* limitation in concentration, persistence, or pace. *Reid v. Astrue*, Civil Action No. 10-0237, 2011 WL 4101302 (S.D. Miss. Aug. 15, 2011) *report and recommendation adopted,* 2011 WL 4101277 (S.D. Miss. Sept. 8, 2011); *Madrid v. Colvin*, Civil Action No. 12-800, 2013 WL 6641305 (N.D. Tex. Dec. 17, 2013); *Cornejo v. Colvin*, Civil Action No. 11-470, 2013 WL 2539710 (W.D. Tex. June 7, 2013). Moreover, it is not clear that someone with minimal immediate and delayed memory, but adequate recent memory, could not perform that type of work. Finally, "fair" social interaction ability does not necessarily imply significant limitation.

By August 11, 2014, however, the record confirms that the situation had changed materially. (Tr. 204). In a letter to the state agency, Dr. Baker, plaintiff's treating psychologist, and the lone examining psychologist in the case, documented worsened depression that had been present since May 2014. (Tr. 204). Capers now was avoiding people, crying frequently, and attending church but sporadically. *Id*. She also had difficulty developing sufficient energy to keep her house clean

---

[6] The court observes, however, that in the psychiatric review technique portion of the agency's initial decision it states that Dr. Baker's opinion was accorded "less than great weight," because it was not fully supported by his own notes. (Tr. 61). The psychiatric review technique was signed by Julia Wood. To the extent that this statement reflects Dr. Wood's belief that Baker assigned greater limitation of functioning than she did, then this serves to undermines the legitimacy of Wood's impressions, and, in turn, the ALJ's assessment, because "an ALJ may properly rely on a non-examining physician's assessment when . . . those findings are based upon a careful evaluation of the medical evidence and *do not contradict those of the examining physician*." *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir.1991) (quoting *Villa, supra*) (emphasis added).

and some days did not arise from bed except to use the bathroom. *Id*.[7] At *minimum*, Capers' ability to interact with others had deteriorated since the time of the consultative examination. Therefore, even if Dr. Baker's November 2013 examination findings were consistent with the assessments by Dr. Wood and the ALJ, by August 2014, it is clear that that no longer was the case.

Ordinarily, a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." 20 C.F.R. § 404.1527(d)(2). "'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir.1995) (citation omitted). However, an ALJ cannot reject a medical opinion without an explanation supported by good cause. *See Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir.2000) (citations omitted).

In her decision, the ALJ made no effort to discount Dr. Baker's August 2014 impression regarding plaintiff's deteriorated mental condition, which he related back to May 2014.[8] Dr.

---

[7] In his August 5, 2014, treatment note, Dr. Baker noted that Capers was becoming more and more socially avoidant. (Tr. 206). She would go off alone at church, and sit on a stool in a closet at home. *Id*.

[8] Plaintiff submitted additional evidence to the Appeals Council which included a July 26, 2015, medical source statement completed by Dr. Baker. (Tr. 6-9). The medical source statement included marked and extreme limitations of functioning that, if credited, likely would preclude all work. However, Baker indicated that the limitations were present as of July 26, 2015. *Id*. It appears that plaintiff's counsel wrote to Dr. Baker in an attempt to ascertain the earliest onset date for the limitations recognized in his medical source statement. *See* Tr. 6. Baker unhelpfully responded that, in his opinion, Capers had been disabled since July 1, 2013. *Id*. Of course, a medical source's statement that a claimant is "disabled" or "unable to work" is not accorded any special significance under the regulations. *See* 20 C.F.R. § 404.1527(d)(1)-(3); *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003). As it now stands, this evidence appears to post-

Baker's uncontroverted opinion that plaintiff's condition had deteriorated, apparently to include limitations of social functioning, undermines the basis for the ALJ's RFC, which ultimately rested upon Baker's opinion. Moreover, plaintiff's own testimony does not support the absence of social limitations. *See e.g.*, Tr. 43 (does not want to be around people; just wants to go in the closet and die).

## II.     Step Five and Remand

Because the foundation for the ALJ's step five determination was premised upon an RFC that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that plaintiff is not disabled, likewise is not supported by substantial evidence.

The courts enjoy the authority to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. 42 U.S.C. §405(g). When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits. *See Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir. 1985); *see also Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (reversing and remanding with direction to enter judgment where the evidence was not substantial and the record clearly showed the claimant's right to benefits). The instant record is not so disposed. Plaintiff's residual functional capacity assessment remains indeterminate.

---

date the relevant period. Therefore, the court cannot consider it as a basis to undermine the ALJ's decision. Upon remand, however, plaintiff can endeavor to have Dr. Baker clarify the earliest onset date for the limitations contained in his medical source statement.

## Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that the Commissioner's decision be REVERSED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 9th day of January 2018.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE